**Richard Lee TUCHER,
Plaintiff–Appellant,**

v.

**BROTHERS AUTO SALVAGE YARD, INC., Kentucky Salvage, Inc., Kentucky & Zebrowski, Inc., Zebrowski & Associates, Inc., J.D. Service, Inc., Carl Johnson, Dennis Gaughan, John Mountford, City of Indianapolis, Defendants–Appellees.**

No. 30A01–9004–CV–151.

Court of Appeals of Indiana,
First District.

Jan. 10, 1991.

Michael C. Peek, Christopher & Taylor, Indianapolis, for plaintiff-appellant.

Kenneth M. Wahnsiedler, Young, Cochran & Reese, Daniel D. Trachtman, Wooden, McLaughlin & Sterner, Beth A. North, City–County Legal Div., Indianapolis, for defendants-appellees.

BAKER, Judge.

Plaintiff-appellant Richard Tucher was injured in a motorcycle accident when his motorcycle skidded in some gravel on a street in the City of Indianapolis. He subsequently brought suit against Kentucky Salvage, Inc., Kentucky & Zebrowski, Inc., and Zebrowski & Associates, Inc. (Kentucky), a group of commonly controlled corporations which owns the land adjacent to the accident site, Brothers Auto Salvage Yard, Inc., a corporation owned by the lessees of the land adjacent to the accident site, the lessees themselves (collectively referred to as Brothers), and the City of Indianapolis (the City).[1] The trial court granted the defendants' motions for summary judgment and Tucher appeals, raising the following restated issues for our review.

I. Whether there was a genuine issue of material fact as to the source of the gravel.

II. Whether there was a genuine issue of material fact regarding the City's constructive notice of the gravel in the roadway.

We affirm in part and reverse in part.

On October 7, 1986, Tucher was riding his motorcycle northbound on Tibbs Avenue in Indianapolis. The time was near sunset, and the roads were dry. As he approached a curve in the road, he skidded in some gravel, lost control of his motorcycle, and collided with a guard rail, injuring himself. Eyewitness testimony revealed Tucher was driving within the 30 m.p.h. speed limit.

Brothers' driveway opens on to the east side of Tibbs Avenue at the south end of the curve where the accident occurred. At the time of the accident, Brothers had a gravel driveway, and there was also a relatively wide gravel berm on either side of the road. There was no testimony revealing the source of the gravel in the road. The witnesses to the accident, however, testified that the gravel was concentrated near the entrance to Brothers' driveway, and that while there was gravel strewn over a fairly large area, the pattern of the gravel showed a decreasing concentration from the east side of the street to the west side of the street. The witnesses, who used Tibbs Avenue occasionally, also testified they had seen gravel in the same area on previous occasions, the most recent being the day before the accident.

---

1. Tucher also filed suit against J & D Service, Inc., another lessee of Kentucky that occupied land in the area, but he has dropped that claim. *Reply Brief of Appellant* at 7.

Tucher brought suit against Kentucky and Brothers under the theory that a landowner/occupier owes a duty not to create a danger to the public traveling on adjacent highways. His suit against the City is predicated on the rule that a municipality has an obligation to maintain safe roadways. The trial court granted the defendants' motions for summary judgment, and Tucher now appeals.

## DISCUSSION AND DECISION

When reviewing an appeal from a summary judgment, we apply the same standards as the trial court, reviewing all the pleadings, depositions, answers to interrogatories, admissions, and any affidavits filed with the court in the light most favorable to the non-movant. *Moore v. Sitzmark, et al.* (1990), Ind.App., 555 N.E.2d 1305. Summary judgment is appropriate only when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law, *Hatton v. Fraternal Order of Eagles Aerie #4097* (1990), Ind.App., 551 N.E.2d 479, *trans. denied,* and is rarely appropriate in negligence actions. *Rediehs Exp., Inc. v. Maple* (1986), Ind.App., 491 N.E.2d 1006, *cert. denied* (1987), 480 U.S. 932, 107 S.Ct. 1571, 94 L.Ed.2d 762. The movant bears the burden of proving the absence of any genuine issue of material fact, and all reasonable inferences must be resolved in favor of the non-movant. *Webb v. Jarvis* (1990), Ind. App., 553 N.E.2d 151. If the movant is the defendant, a showing of the absence of any genuine issue of material fact shifts the burden to the plaintiff to show a genuine issue of material fact does exist. *Ogden Estate v. Decatur County Hosp.* (1987), Ind.App., 509 N.E.2d 901, *trans. denied;* 3 W. HARVEY, INDIANA PRACTICE §§ 56.9, 56.10 at 628–31. An issue surrounding a material fact is genuine it its resolution requires the trier of fact to resolve the opposing parties' versions of the facts. *Jones v. City of Logansport* (1982), Ind.App., 436 N.E.2d 1138.

■ Tucher's actions are grounded in negligence. To prevail, he must therefore prove the three elements of actionable negligence: 1) a duty flowing from the defendant to the plaintiff; 2) a breach of that duty; and, 3) injury to the plaintiff stemming from the breach. *Hatton, supra.* Brothers and Kentucky acknowledge they have a duty not to create hazards on highways adjacent to their land. *Blake v. Dunn Farms* (1980), 274 Ind. 560, 413 N.E.2d 560; *Pitcairn v. Whiteside* (1941), 109 Ind.App. 693, 34 N.E.2d 943.[2] Similarly, the City acknowledges it has a duty to maintain safe streets. *City of South Bend v. Fink* (1966), 139 Ind.App. 282, 219 N.E.2d 441. The question for us, then, is whether Tucher, in response to the defendants' motions for summary judgment, presented sufficient evidence of a breach of the acknowledged duties to demonstrate the existence of a genuine issue of material fact.

## I

■ Regarding Brothers and Kentucky, we hold Tucher has not made a sufficient showing of breach of duty to withstand the motions for summary judgment. Tucher has failed to show the gravel on which he slipped came from Brothers' driveway. All the parties agree the gravel *could* have come from the driveway, but they all also agree the gravel *could* have come from some other source, such as the berm of the street. Tucher argues the question is one for the jury. We disagree.

This court addressed a similar issue in *Czarnecki v. Hagenow* (1985), Ind.App., 477 N.E.2d 964. In *Czarnecki*, the plaintiff was injured when he attempted to unhook a hay chopper from a tractor. Unbeknownst to the plaintiff, someone had tied a rope from the chopper, through the win-

---

**2.** In *Blake, supra,* the supreme court ruled that a landowner which neither occupies nor controls the land in question could not be liable for any acts of its tenant which created a hazard on the adjacent roadway. At oral argument, Kentucky chose to abandon any defense it may have had regarding its control over the property leased to Brothers, relying instead on the argument that Tucher failed to present sufficient evidence on the source of the gravel to withstand the summary judgment motions.

dow of the tractor, to the cab of the tractor. The plaintiff released the power take-off drive from the tractor to the chopper, but did not untie the rope. When he attempted to drive the tractor away from the chopper, the rope snapped, breaking the tractor window and sending glass into the plaintiff's eye. The tractor belonged to the plaintiff's employer's brother, and the chopper belonged to the defendant, who was the plaintiff's employer's neighbor. The plaintiff alleged the defendant or one of his employees had negligently tied the rope from the chopper to the tractor, but he was unable to prove his allegation. One of the defendant's employees admitted in deposition testimony he could have tied the rope, but he had no recollection of doing so. The trial court granted summary judgment and this court affirmed, holding the evidence was insufficient to raise an issue of fact. *Id.*, at 966. "A jury finding [that the defendant or one of his employees tied the rope] would be fatally defective as based upon mere conjecture." *Id.* (citation omitted).

So it is here. Neither Tucher nor the witnesses to the accident could identify the gravel as having come from Brothers' driveway, and Tucher presented no other testimony or evidence to indicate definitively the source of the gravel. Tucher's testimony was as follows:

Q. Do you know how you happened to come across Brothers Auto Salvage Yard as to being the Defendant in this case?
A. I guess that's the property that the gravel came from.
Q. And how do you know that?
A. Every indication points to that's where the gravel came from.
Q. Factually, what indication do you have that the gravel that was in the road that you saw on October 7, 1986, came from Brothers Auto Salvage Yard? What facts do you have that indicate to you that the gravel you saw on the roadway on October 7, 1986 came from property owned or controlled by Brothers Auto Salvage Yard?
A. Well, they don't have a name tag on it or anything like that, if that's what

you mean, but they're being, you know, the gravel came out of a driveway.
Q. How do you know that?
A. Well, I don't imagine somebody just dropped it there.
Q. Well, that's not out of the realm of possibilities, is it?
A. No, I suppose not, but—
Q. All right. What other facts do you have to indicate that this debris came out of a driveway?
A. Just the way it was scattered, I guess.

*Record* at 244–45. One of the eyewitnesses testified that, after having walked around the accident scene for several minutes, the gravel appeared to be "[b]asically ... what was on the side of the road." *Record* at 311. The other eyewitness testified the gravel "came from the side of the road—from the east side of the road."

This testimony does not give rise to a question of material fact. It presents no differing versions of the facts for the trier of fact to resolve. *Jones, supra,* The only argument Tucher makes is that because Brothers' driveway was gravel and close to the accident site, it must have been the source of the gravel. This will not do; Tucher was required to come forward with some *evidence,* as opposed to guesses, that the gravel came from Brothers' driveway. *Ogden Estate, supra.* His failure to do so mandates summary judgment against him. *See Watson Rural Co., Inc. v. Indiana Cities Water Corp.* (1989), Ind.App., 540 N.E.2d 131, 139, *trans. denied* (adopting the analysis of *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 in Indiana). The trial court properly granted summary judgment to Brothers and Kentucky.

## II

The City, however, stands on different footing than Brothers or Kentucky. The principle that a governmental entity has a duty to keep streets in good repair is well settled. *City of South Bend, supra; see also County of LaPorte v. James* (1986), Ind.App., 496 N.E.2d 1325 (road maintenance is a ministerial function for which

the governmental entity is not immune except as specifically provided in the Indiana Tort Claims Act).

■ The threshold question is whether the presence of gravel in a roadway is a defect which a governmental entity is obliged to remove. In *Walton v. Ramp* (1980), Ind.App., 407 N.E.2d 1189, we held that ice on a road, created when an adjacent landowner allowed water to spill onto the road, was not a condition caused by weather for purposes of governmental immunity under IND.CODE 34-4-16.5-3. Immunity issues aside, *Walton* stands for the proposition that a defect in a roadway need not be a permanent condition for a governmental entity to be liable. When deposited on roadways, gravel, like the ice in *Walton*, presents a recurring danger to the motoring public. It is thus a defect which, given the proper notice discussed below, governmental entities must remove or otherwise alleviate. *See also City of Bloomington, et al. v. Holt* (1977), 172 Ind.App. 650, 361 N.E.2d 1211; *Larsen v. Vigliarolo Bros., et al.* (1980), 77 A.D.2d 562, 429 N.Y.S.2d 273, *appeal dismissed* (1980), 52 N.Y.2d 702, 437 N.Y.S.2d 1025, 418 N.E.2d 679.

■ To be held liable for injuries caused by a defective condition in a roadway, the governmental entity must have knowledge of the defect, either actual or constructive. *Miller v. Indiana State Highway Dept.* (1987), Ind.App., 507 N.E.2d 1009, *reh'g. granted in part*, 514 N.E.2d 93, *trans. denied; City of Logansport v. Gammill* (1957), 128 Ind.App. 53, 145 N.E.2d 908. Constructive knowledge will lead to liability for only those defects which the exercise of ordinary care and diligence would have discovered. *City of New Albany v. Slattery* (1920), 72 Ind.App. 503, 124 N.E. 755.

■ In the present case, it is undisputed the City had no actual knowledge of the presence of gravel at the accident site. One of the eyewitnesses, however, testified she had seen gravel at the accident site on the day before the accident. The other eyewitness testified she had seen gravel in the location of the accident on several previous occasions. The issue, then, becomes whether this testimony created an issue of fact for the jury on the question of the City's constructive notice.

Several cases have involved the same question of constructive notice. *Miller, supra; State v. Bouras* (1981), Ind.App., 423 N.E.2d 741; *Galbreath v. City of Logansport* (1972), 151 Ind.App. 291, 279 N.E.2d 578; *City of Logansport, supra; City of New Albany, supra.* While these cases came before the court with various procedural stances and issues for review, one underlying theme is constant: the question of whether the governmental entity had constructive notice of the alleged defect is a question properly for the jury. None of the cases cited makes any statement defining the period of time a defect must be present before the governmental entity can be charged with constructive notice, and we will not do so here. Deposition testimony revealed the presence of gravel in the area of the accident on several previous occasions, and while this testimony may not be enough to win a jury verdict, it was enough to withstand a motion for summary judgment so a jury can decide whether the City had constructive notice of the presence of the gravel. Summary judgment is not appropriate merely because the non-movant appears unlikely to prevail at trial. *Holland v. King* (1986), Ind.App., 500 N.E.2d 1229. The trial court erred in granting summary judgment to the City.[3]

The summary judgment in favor of Brothers and Kentucky is affirmed. The summary judgment in favor of the City is

---

**3.** As we have already noted, Tibbs Avenue had a gravel berm at the time of the accident. As with Tucher's argument against Brothers and Kentucky, the gravel at the accident site *could* have been the City's gravel from the berm, but it also *could* have been from another source. Lest our rationale for reversing the summary judgment for the City be misconstrued, we make clear that the City is subject to liability on the ground that it may not have removed gravel of which it may have had constructive notice, not because it may have allowed gravel to get into the roadway.

reversed, and the cause is remanded for further proceedings consistent with this opinion.

HOFFMAN, P.J., concurs.

ROBERTSON, J., concurs and dissents with separate opinion.

ROBERTSON, Judge, concurring and dissenting.

I concur with the majority opinion as it relates to the city of Indianapolis.

I respectfully dissent to the granting of summary judgment as it applies to Brothers and Kentucky. The majority opinion is based upon Tucher's failure to come forward with evidence about the source of gravel on the street.

Summary judgment is ordinarily not the appropriate vehicle to determine a negligence case. *Rediehs Exp., Inc. v. Maple* (1986), Ind.App., 491 N.E.2d 1006. Moreover, it has been held, in *Newhouse v. Farmers National Bank of Shelbyville* (1989), Ind.App., 532 N.E.2d 26, 28:

On Appeal from the grant or denial of summary judgment we use the same standard in ascertaining the propriety of summary judgment as did the trial court. Summary judgment is appropriate only when the record establishes that no genuine issue of material fact exists and the proponent is entitled to summary judgment as a matter of law. The movant bears the burden of establishing the propriety of summary judgment, and all facts and inferences to be drawn therefrom are viewed in a light most favorable to the non-movant. Summary judgment should be granted guardedly and should not be used as an abreviated trial. Thus, even when the facts are not in dispute, if conflicting inferences could be drawn from those facts, summary judgment is inappropriate. The trial court's belief as to whether the non-movant will be successful at trial is not a ground for granting summary judgment. Also, even when the facts and inferences are not in issue, if those facts do not mandate a judgment in favor of the movant but only permit such a result, then summary judgment is inappropriate. (Citations omitted.)

It is my opinion that the facts upon which summary judgment is based in this case present conflicting inferences or, in the alternative, only permit the granting of summary judgment but do not mandate it. Summary judgment, in my opinion, is not appropriate to this case.