David H. HARPER, Appellant
(Plaintiff Below),

v.

GUARANTEE AUTO STORES, Appellee
(Defendant Below).

No. 41A01–8712–CV–306.

Court of Appeals of Indiana,
First District.

Feb. 9, 1989.

Tommy L. Strunk, Indianapolis, for appellant.

Peter G. Tamulonis, Donald L. Dawson, John B. Drummy, Robert J. Nice, Kightlinger & Gray, Indianapolis, for appellee.

ROBERTSON, Judge.

David H. Harper appeals a summary judgment entered in favor of defendant, Guarantee Auto Stores (Guarantee).[1] We reverse because we find genuine issues of material fact.

The facts which the trial court had before it in ruling on the summary judgment show that an employee of Guarantee installed a tire on co-defendant Barbara Hacker's automobile and in so doing removed Hacker's spare tire and transferred it and a jack to the wheel well of Hacker's 1983 Chevette Hatchback Scooter. The wheel well is located in the passenger compartment of that automobile. Approximately three months later, Hacker, driving the Chevette, struck a utility pole head-on. Harper alleges the force of the impact caused the tire and jack to become projectiles and strike Harper who was a passenger in the automobile. He maintains Guarantee's negligent failure to properly secure the tire and jack proximately caused his injuries.

Guarantee argued that its negligence merely created a condition which could not be a proximate cause of Harper's injuries unless Hacker's subsequent intervening conduct was reasonably foreseeable, and the trial court agreed. The court concluded Guarantee could not as a matter of law reasonably foresee that Hacker would run off the road and strike a tree; therefore, Hacker's conduct was an intervening cause which relieved Guarantee of liability.

Our analysis proceeds from the premise that summary judgment is rarely appropriate in negligence actions.[2] *Ember v. B.F.D., Inc.* (1986), Ind.App., 490 N.E.2d 764, 768. Inasmuch as the issue of foreseeability concerns matters of policy often addressed in the analysis of the duty element, we will consider Guarantee's duty, if any, first.

### I.

The duty to exercise care for the safety of another arises as a matter of law out of some relationship existing between the parties, and it is the province of the court to determine whether such relation gives rise to a duty. However, factual questions may be interwoven with the determination of the existence of a relation, rendering the existence of a duty a mixed question of law and fact, ultimately to be

---

1. Guarantee urges us to summarily affirm the trial court's judgment because Harper failed to provide us with a complete record and a verbatim statement of the judgment in his brief. While we acknowledge there is authority for summarily affirming judgments when an appellant has not met his burden of providing this court with an adequate record, Ind.Rules of Procedure A.R. 7.2(C) now provides that incompleteness or inadequacy of the record shall not constitute a ground for dismissal or preclude review on the merits. Accordingly, we have corrected Harper's omissions sua sponte.

2. Under T.R. 56(C), a summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits and testimony, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The party seeking summary judgment bears the burden of establishing that there is no genuine issue of material fact. *Gaboury v. Ireland Road Grace Brethren, Inc.* (1983), Ind., 446 N.E.2d 1310, 1313. On appeal, the facts and inferences must be liberally construed in favor of the non-movant, and all doubts must be resolved in the non-movant's favor. *Id.* This is the same standard as that employed by the trial court. *Ogden Estate v. Decatur County Hospital* (1987), Ind.App., 509 N.E.2d 901, 902, *trans. denied.*

resolved by the fact-finder. *Clyde E. Williams & Associates, Inc. v. Boatman* (1978), 176 Ind.App. 430, 375 N.E.2d 1138, 1144, *trans. denied; see also, Ember, supra.*

■ Contrary to Guarantee's assertions, Indiana law does not preclude liability in tort for personal injury merely because privity is absent. *See, Essex v. Ryan* (1983), Ind.App., 446 N.E.2d 368. Rather, the law recognizes a party may gratuitously or by contractual undertaking to render services, place himself in such a position that the law will impose upon him a duty to perform his undertaking in a manner which will not jeopardize the safety of others, including third persons. *See, e.g. Flint & Walling Mfg. Co. v. Beckett* (1906), 167 Ind. 491, 79 N.E. 503; *Boatman, supra; Ember, supra.*

■ This court adopted § 324A of the Restatement (Second) of Torts in *Baker v. Midland–Ross Corp.* (1987), Ind.App., 508 N.E.2d 32.[3] To establish liability under § 324A, Harper must demonstrate that Guarantee engaged in an undertaking to render services, and, either: (1) that the risk of harm to Harper increased due to Guarantee's failure to exercise reasonable care; (2) that Guarantee undertook to perform a duty owed by Hacker to Harper; or, (3) that the harm suffered by Harper was a consequence of Hacker's reliance on services rendered by Guarantee. In addition, Harper must show that Guarantee should have recognized the careful execution of its undertaking was necessary for the protection of Harper. Other jurisdictions view this latter criterion as the traditional requirement of foreseeability. *See, e.g.*

*Glick v. Olde Town Lancaster, Inc.* (1987), 369 Pa.Super. 419, 535 A.2d 621, *allocatur denied* 548 A.2d 255.

The uncontradicted evidence shows Hacker entered into a contract with Guarantee for the purchase and installation of a tire. Hacker's spare tire was on the car when she delivered the car to Guarantee. Hacker left the garage while Guarantee mounted the tire, returning later to pick up the car and pay for the service. Guarantee's employee acknowledged he placed both the tire and the jack in the wheel well after the spare tire had been removed. He does not recall whether he secured the tire or jack.

■ Harper presented evidence of an affirmative act sufficient to create an inference that Guarantee undertook to provide a service which if done with reasonable care would have prevented Harper's injuries, and evidence of two of the three factors listed above. Regardless of whether Guarantee was acting pursuant to the contract, Guarantee's employee set out to assist Hacker by placing the tire and jack in her car. This evidence raises a factual question on the issue of whether Guarantee undertook such a service. *Cf. Eichler v. Plitt Theatres, Inc.* (1988), 167 Ill.App.3d 685, 118 Ill.Dec. 503, 521 N.E.2d 1196, *cert. denied* (Company retained to perform snow blowing and snow removal also removed ice although it had no contractual duty to do so, precluding summary judgment.) Similarly, the evidence disclosed that the manufacturer of Hacker's vehicle equipped the wheel well with mechanisms for securing the tire and jack. If Guarantee placed the tire and jack in the wheel well without

---

**3.** Restatement (Second) of Torts, § 324A (1977) provides:

> One who undertakes, gratuitously or for consideration, to render services to another, which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
> (a) his failure to exercise reasonable care increases the risk of such harm, or
> (b) he has undertaken to perform a duty owed by the other to the third person, or
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Although this section is most frequently cited in cases where a failure to inspect has been alleged, comment (b) makes clear the section applies to *any* undertaking to render services resulting in physical harm to third persons where there is negligence in the manner of performance, or a failure to exercise reasonable care to complete it or protect third persons when the undertaking is discontinued. *Cf., also,* Restatement § 324A, comment c., illustration 1.

properly securing them, one could infer Guarantee augmented the risk to Hacker's passengers by creating a new risk, one envisioned by the manufacturer and ordinarily eliminated. *See, Restatement,* comment c, illustration 1. Harper also showed that Guarantee entered into a contract to perform services within its field of expertise. Some courts have held that by demonstrating such a contract exists, reliance on the undertaking is deemed to exist as a matter of law. *See, e.g. Scott & Fetzer Co. v. Montgomery Ward & Co.* (1986), 112 Ill.2d 378, 98 Ill.Dec. 1, 493 N.E.2d 1022; *Pippin v. Chicago Housing Authority* (1979), 78 Ill.2d 204, 35 Ill.Dec. 530, 399 N.E.2d 596.[4]

The question remaining is whether Guarantee's employee should have recognized that care in storing the jack and tire was necessary for the protection of passengers such as Harper. On this point the evidence offered does not preclude a difference of opinion by reasonable persons.

It is common knowledge that tires and jacks are heavy objects which if swung or propelled by force against a person can cause injury or death. It is also common knowledge that a heavy object stored in a cavity will be held in place by gravity unless acted upon by some external force. The impact of two automobiles or an automobile with a stationary object, in everyday experience, generates such a force and causes the movement of bodies or objects toward the point of impact.

Guarantee's employee worked on Hacker's Chevette. It is reasonable to infer he knew it was a hatchback, knew that the wheel well was in the passenger compartment, and observed or from his experience should have known that the wheel well was equipped with devices for securing the spare and jack. Guarantee's employee also had actual experience with the carpet and plastic wheel well cover and the manner in which they were secured. One might reasonably infer from the weight of the covering that it would be insufficient of itself to prevent the movement of the tire or jack if sent in motion by an external force. In short, a reasonable jury could conclude that proper storage of the spare and tire was necessary for the protection of Harper.

The facts offered, when considered in the light most favorable to Harper, are sufficient to demonstrate the existence of a relationship between Harper and Guarantee such as to impose a duty to use care toward Harper. Consequently, Guarantee was not entitled to summary judgment on the element of duty.

## II.

Guarantee next argues that as a matter of law its negligence was not the proximate cause of Harper's injuries. The heart of its argument is the assertion that its negligence merely created a condition which could not be the cause of Harper's injuries unless Hacker's subsequent intervening conduct was foreseeable. Guarantee cites a series of cases for the proposition that an automobile accident which produces injury as a result of a condition created by a

**4.** The Restatement § 324A formulation of duty parallels Indiana's doctrine of assumed duty. *See,* § 324A, comment f and § 323, comments d and e. Indiana law recognizes a duty of care may arise when one through affirmative conduct or agreement, undertakes or assumes a duty to act. *Ember, supra; Boatman, supra; Beckett, supra.* Whether a party has undertaken a duty and the exact scope of any duty assumed are generally matters for jury determination, *Ember, supra* at 770, *Plan–Tec, Inc. v. Wiggins* (1983), Ind.App., 443 N.E.2d 1212, 1220, although liability turns, at least in part, on whether one characterizes a defendant's conduct as misfeasance, a negligent performance, or nonfeasance, a complete omission or failure to act. A showing of misfeasance, without more, will support liability, while liability for nonfeasance, in connection with a gratuitous duty, is confined to situations where the beneficiaries relied upon performance or the actor increased the risk of harm. *Ember, supra* at 770; *Bd. of Commissioners of Monroe County v. Hatton* (1981), Ind.App., 427 N.E.2d 696, *trans. denied* (County did nothing to make curve more dangerous); *but, cf. Plan–Tec, Inc., supra* at 1221. This court has already held that some omissions or failures to act may be indicative of misfeasance. *See, Ember, supra* at 771 ("The failure to do what a reasonably prudent person would do after taking control of a situation, i.e. after undertaking a duty to act, is nonetheless misfeasance.")

defendant's negligence is not reasonably foreseeable.

In determining whether a cause of injury is actionable, the test is to be found not in the number of intervening events, but in the character of the original act and its natural and probable consequences. *See, Elder v. Fisher* (1966), 247 Ind. 598, 217 N.E.2d 847, 852. A negligent act or omission is a proximate cause of injury if injury is a natural and probable consequence which in light of the circumstances should reasonably have been foreseen or anticipated, regardless of whether the earlier negligence concurs with other proximate causes of injury, *id.*, or another act of negligence intervenes. *See, Havert v. Caldwell* (1983), Ind., 452 N.E.2d 154. Consequently, when an independent agency does intervene between the defendant's negligence and the injury, the legal effect of the intervening agency is not determined by characterizing a defendant's actions as merely creating a condition, but depends instead upon whether, under the circumstances, the agency might reasonably have been expected to intervene in such a way as to produce an injury similar to the one actually caused.[5] *Mansfield v. Shippers Dispatch, Inc.* (1980), Ind.App., 399 N.E.2d 423, 426, *trans. denied; Havert*, 452 N.E.2d at 158–159; *City of Bloomington v. Kuruzovich* (1987), Ind.App., 517 N.E.2d 408, 415.

The determination of what is reasonably foreseeable is not judged by the subjective opinions of those involved, but is based upon the standard of due care in avoiding a result which might reasonably have been anticipated in the ordinary experience of men. *Geyer v. City of Logansport* (1977), 267 Ind. 334, 370 N.E.2d 333, 337. If the actor's conduct is a substantial factor in bringing about harm to another, the fact that the actor neither foresaw nor should have forseen the extent of harm or the manner in which it occurred does not preclude liability. *Id.* Thus, liability does not depend on whether the defendant could have predicted injury would happen to the plaintiff in exactly the way it did or the statistical likelihood of the particular circumstances which befell the plaintiff. On the other hand, if the actor should have realized his conduct might cause harm to another in substantially the manner in which it is brought about, the harm is universally regarded as the legal consequence of the actor's negligence. *Tabor v. Continental Baking Co.* (1941), 110 Ind. App. 633, 38 N.E.2d 257, *trans. denied,* citing Restatement, § 435, comment b.

Hence, Guarantee need not have foreseen Hacker would run off the road and hit a tree, if Guarantee's conduct was a substantial factor in bringing about the complained of injury or a reasonable person would have recognized that harm from the tire or jack would occur in substantially this manner. Generally, it is the jury's function to determine whether a defendant's conduct was a substantial factor in bringing about injury; when there might be a reasonable difference of opinion as to the foreseeability of a particular risk or the reasonableness with regard to it, the question is also one for the jury. *Id.; Slagal, supra* 212 Ind. at 413, 8 N.E.2d 993. Thus, we must determine whether this case is unique in the sense that reasonable persons could not differ in resolving these considerations.

Witnesses observed the tire lying in the passenger compartment within a few hours of the collision. One of Hacker's passen-

---

**5.** An intervening cause which severs the liability of an earlier negligent actor is itself the natural and probable cause. *See, Havert, supra* at 158. Such an intervening cause

interrupts the natural sequence of events, turns aside their course, prevents the natural and probable result of the original act or omission, and produces a different result that could not have been reasonably anticipated. The concurrent or succeeding negligence of ... a third person which does not break the sequence of events is not such a cause and constitutes no defense for the original wrongdoer, although in the absence of the concurrent or succeeding negligence, the accident would not have happened.

*Swanson v. Slagal* (1937), 212 Ind. 394, 406, 8 N.E.2d 993; *Crull v. Platt* (1985), Ind.App., 471 N.E.2d 1211, 1215, *trans. denied; Reynolds v. Strauss Veal, Inc.* (1988), Ind.App., 519 N.E.2d 226.

gers retrieved his suitcase from the vehicle a few days after the collision and at that time observed the jack and its handle in the back of the Chevette. By then, however, the car had been towed to a service station, the front end had been hoisted into the air, and the front tires had been removed. The spare tire was not in view. The witness observed the plastic cover over the wheel well was ajar and the carpet had been moved. The suitcase, which was recovered from the area behind the front seat, directly in front of where Harper was sitting at the time of the collision, appeared to have been knocked around. Photographs reveal the mechanisms for securing the tire and jack were not broken.

Harper's physician reported that Harper had a three-inch hole in the back of his head. The injury had a "V" shape to it and was caused by something with a sharp edge. The physician ruled out the suitcase as a possible cause, but opined that the sharp edge of the jack could have caused this particular injury. While the record does not convince us that other numerous injuries to the back of Harper's head and neck were more probably caused by the tire, rather than some other object such as the suitcase, the evidence does permit one to infer that Harper was probably struck by the jack. There is therefore a cause-in-fact question to be resolved by the jury.

■■■ Likewise, we believe the question of whether Harper's injury was a natural, probable and foreseeable consequence of Guarantee's negligence is particularly one for jury determination. Generally, an actor is required to know the qualities and habits of human beings, including the potential for error, and also the qualities, character, and capacities of things and forces of nature to the extent they are common knowledge. Restatement (Second), § 290, comment c, m. Where, as here, the actor's conduct has created a situation which without more is not dangerous to anyone but which may become dangerous if subsequently acted upon by a human being or force of nature, the reasonableness of the actor's conduct must be evaluated, ultimately by weighing the likelihood

and potential for harm against the utility of the actor's conduct. *Id.*, comment i; *see also, Phillips v. Croy* (1977), 173 Ind.App. 401, 363 N.E.2d 1283, 1285, *trans. denied.* Whether the risk involved in doing a particular act is apparent to an ordinarily prudent person is most appropriately left for a jury which can bring to bear its varied experience and common knowledge.

Moreover, we are not persuaded that the decisions cited by Guarantee involving multiple car collisions dictate a contrary result here. In the present case, the risk created by Guarantee, that the tire and jack would come out of the wheel well with extreme force if not properly secured, included the intervention of the negligence of others and depended upon it; an intervening external force was a normal incident of the risk created. In addition, Guarantee's negligence did more than create a condition. The basis of the tort itself was Guarantee's failure to prevent the risk it created from occurring. In *Havert, supra,* and the multiple collision cases preceding it, the defendants exposed the plaintiffs to an objectively foreseeable risk of injury as a consequence of the impact of their vehicles, not to a risk of injury later, after the fact, while investigating the damage. *See, Peck v. Ford Motor Co.* (7th Cir.1979), 603 F.2d 1240 (Defect in Ford truck which led to breakdown of truck on highway but caused no injury at that time, was tort which had "spent its force" once other vehicles in immediate area had safely cleared the truck). Thus, the multiple collision cases are distinguishable in that the injuries sustained by the plaintiffs were outside the zone of foreseeable harm; here, reasonable minds might differ on that very issue. Accordingly, we conclude the question of proximate cause should not have been removed from the jury.

### III.

■■■ Finally, Harper can recover only if he establishes Guarantee breached a duty owed him which was the proximate cause of his injuries. *Ogden Estate,* 509 N.E.2d 901, 902. Negligence, just as any other fact or condition may be proved by

direct proof or it may be inferred from the circumstances surrounding the injury. *New York, Chicago & St. Louis Railroad Co. v. Henderson* (1957), 237 Ind. 456, 146 N.E.2d 531. The record reveals no direct evidence of Guarantee's negligence; Harper is therefore necessarily relying upon circumstantial evidence. When the circumstances are relied upon to raise an inference of negligence, they must be of such significance and relationship to one another that a reasonable conclusion of negligence can be founded thereon, and while reasonable inferences may be drawn from the facts and conditions shown, they cannot be drawn from facts or conditions merely imagined or assumed. *Kelley v. Skeen* (1968), 143 Ind.App. 387, 240 N.E.2d 837, 840. No inference of negligence may be drawn here from the happening of the accident or occurrence of Harper's injuries, because Harper does not contend the special circumstances necessary to invoke the doctrine of res ipsa loquitur are present. *Haidri v. Egolf* (1982), Ind.App., 430 N.E.2d 429, 432.

Harper is urging that two inferences be drawn: that the injuries to his head and neck were caused by particular instrumentalities and that Guarantee's conduct with respect to the jack and tire was negligent. As we indicated earlier, the evidence in the record tends to eliminate other causes of the "V"-shaped neck injury, such as the suitcase. The only other items observed in the car were a pair of boy's tennis shoes and a child's McDonald's glass. Given the shape of injury, its particular size and the opinion that the wound was made by a sharp object, these items are not equally probable causes.

Harper's evidence also tends to eliminate causes other than Guarantee's negligence. Hacker purchased the 1983 Chevette new in October, 1982 and the tire from Guarantee on April 1, 1983. Hacker testified that during the three-month period between the installation of the new tire and the collision, no one, other than Guarantee, had access to the car when she was not present. No one borrowed the car and no one drove the car in her absence. Hacker never

looked in the wheel well or had reason to look in as she heard no rattles.

Plaintiff's expert examined photographs of the wheel well and determined that the devices supplied by the manufacturer for securing the jack had not been broken. While the possibility exists that the jack could have come loose without damaging these devices because the mechanisms provided were defective, there is no evidence in the record suggesting that such a defect was a reasonable possibility or even probable. In any event, a plaintiff need not exclude every possibility; he need only eliminate reasonable explanations other than the defendant's negligence. *Shull v. B.F. Goodrich Co.* (1985), Ind.App., 477 N.E.2d 924, 931, *trans. denied; Bituminous Fire & Marine Ins. Co. v. Culligan Fyrprotexion, Inc.* (1982), Ind.App., 437 N.E.2d 1360, 1365.

The evidence offered permits a legitimate inference of negligence; therefore, summary judgment on this element was inappropriate as well. The entry of summary judgment in favor of Guarantee should be reversed.

Judgment reversed, and the cause is remanded for further action not inconsistent with this opinion.

RATLIFF, C.J., and CONOVER, P.J., concur.